OPINION OF THE COURT
Nicholas A. Clemente, J.
On January 18, 1983, Liza Grinberg, approximately 65 years of age, lost her husband. Her physical and psychiatric condition seriously deteriorated thereafter. From February 2, 1984 to February 14, 1984, she was confined to Coney Island Hospital. The final diagnosis was organic brain syndrome but there was no evidence of psychosis or depression. She was discharged with a notation that “24 hour homemaker arranged by family”. So it was that her cousin, Gedalia Kohler, hired one Sonya Pincheva to care for her. Mrs. Pincheva was to be compensated at the rate of $300 a week, from funds belonging to Mrs. Grinberg. Each week Mr. Kohler accompanied Mrs. Grinberg to the bank in order to pay this homemaker. After a while, Mrs. Pincheva prevailed upon her charge to leave her apartment and come live with her. Thereafter, Mrs. Grinberg’s funds, which amount to more than $300,000 were transferred from her name to joint accounts in the name of Pincheva *598 and Grinberg. In addition, Pincheva took $68,749 of Mrs. Grinberg’s funds and by teller’s check gave it to her son, Alex Pincheva. Finally, Pincheva is also in control of Mrs. Grinberg’s jewelry.
As a result of the foregoing occurrences, Gedalia Kohler commenced this special proceeding by petition for a writ of habeas corpus. Kohler in his petition, inter alia, contends that Pincheva has exercised undue influence over Mrs. Grinberg, that she has prevented her from being treated by doctors and that Pincheva has refused to permit her to visit with him.
The writ was returned before me on July 10, 1984. Dr. Jerome Dreisin, upon consent of the parties, was appointed by the court to ascertain the psychiatric state of Mrs. Grinberg. Thereafter an evidentiary hearing was commenced on July 19, 1984. The hearing established that Mrs. Grinberg is not only extremely susceptible to suggestion but that, except for intense coaching, is unaware of her assets and familial relationships. She is patently under the influence of Sonya Pincheva and, although appearing to be cared for physically, she is being emotionally manipulated by Mrs. Pincheva, an admitted welfare cheat.* All of Mrs. Grinberg’s assets are now either secreted by Pincheva or subject to Pincheva’s control.
The petitioners have proceeded by writ of habeas corpus because of the unusual circumstances herein. Ordinarily, a proceeding pursuant to article 77 and/or 78 of the Mental Hygiene Law might be appropriate but the family perceived that they had to first rescue Mrs. Grinberg from the control of Pincheva. This they sought to do pursuant to this writ of habeas corpus.
For the court to reject jurisdiction of this matter because of any procedural infirmity would exalt form over substance. In addition, the court must endeavor to protect Mrs. Grinberg’s physical, psychological and financial interests. As stated in Prude v County of Erie (47 AD2d 111, 113): “Incompetent persons are wards of the court upon whom a duty devolves to protect both their persons and their property. The duty is not limited only to those cases in which a *599 committee has been appointed but extends to every case where the issue of incompetency exists (Wurster v. Armfield, 175 N. Y. 256, 262; Matter of Moore v. City of New York, 276 App. Div. 585, 587).”
In any event, upon invocation of the writ of habeas corpus, the duty of the court to protect Mrs. Grinberg’s rights becomes overwhelming. This follows from the nature of the writ of habeas corpus which has been referred to as the historic writ of liberty. Furthermore, the right to invoke habeas corpus is so primary and fundamental that it must take precedence over considerations of procedural orderliness and conformity (People v Schildhaus, 8 NY2d 33, 36).
The situation at bar is such that after hearing Mrs. Grinberg’s own unsworn testimony, it is beyond serious dispute that she is incapable of handling her affairs. Other evidence presented shows that a lifetime of frugality has been replaced by a careless course of conduct. This further buttresses the conclusion of incompetence (Ann., 9 ALR3d 780). The matter is an urgent one justifying the “great writ” because the party who is exercising control over her is unquestionably acting in her own selfish interests (cf. Matter of Schermerhorn, 277 App Div 845, affd 302 NY 660).
Upon reflection, two things are clear. One is that Mrs. Grinberg must be removed from Pincheva’s custody and two, that Mrs. Grinberg’s funds and jewelry must be safeguarded from the grasp of Pincheva. As to the property, a temporary receiver should be appointed over the property pursuant to subdivision (f) of section 78.03 of the Mental Hygiene Law. In view of the evidence presented at the hearing, it is the court’s determination that Gedalia Kohler act as temporary receiver.
He is to gather all of Mrs. Grinberg’s assets and deposit them in FDIC insured money market accounts. In addition, Pincheva is to deliver Mrs. Grinberg’s jewelry to him in court together with any other personal property she is now holding. These assets are not to be disbursed except by order of the court as necessary to pay for Mrs. Grinberg’s living expenses and other appropriate fees.
*600 This only partially resolves,the procedural dilemma of the court herein.
By virtue of her incompetency, Mrs. Grinberg is not capable of determining her place of abode or administering her property. Therefore, to solely order the protection of her property still leaves Mrs. Grinberg vulnerable. Article 78 of the Mental Hygiene Law, however, specifically subdivision (e) of section 78.03 mandates, amongst other rights, representation by counsel or the appointment of a guardian ad litem prior to an adjudication of ultimate incompetency. Mrs. Grinberg has not had the opportunity to avail herself of the protection contemplated by the statute. Hence that determination cannot be made in this proceeding. The court is, nevertheless, as indicated above, obliged to invoke temporary measures pending a more complete determination.
At the hearing, there was testimony that Herschel Kohler and his wife, a cousin of Mrs. Grinberg, who reside in Pennsylvania, would be willing to care for her. In addition, it is the court’s impression that they would be loving and considerate custodians. Accordingly, pending commencement of a new proceeding pursuant to article 78 of the Mental Hygiene Law, Mrs. Grinberg is temporarily placed in their custody, provided he agrees to return Mrs. Grin-berg to this jurisdiction when required.
The order, to be settled on notice, should provide for a date certain when Mrs. Pincheva shall be required to deliver Mrs. Grinberg, at Special Term, to the care of Herschel Kohler. It shall also provide that the Roosevelt Savings Bank and all other institutions now holding the funds of Mrs. Grinberg, jointly or otherwise, be directed to pay such moneys to Gedalia Kohler, all subject to the further order of this court.

 Despite receiving $400 per week for the care of Mrs. Grinberg (having given herself a $100 per week increase), Mrs. Pincheva is a welfare recipient.